IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:11cv326

| | |
|---|---|
| GREGORY CARTER, JOANNE CARTER, WILLIAM WRIGHT, </br></br>Plaintiffs, </br></br>v. </br></br>BANK OF AMERICA, N.A., </br></br>Defendant. | </br></br></br></br></br></br>MEMORANDUM AND RECOMMENDATION |

Pending before the Court is the Motion for Summary Judgment [# 59]. This action stems from Plaintiffs' purchase of a lot in the River Rock development in North Carolina. Plaintiffs brought this action against Defendant Bank of America, N.A. ("Bank of America") asserting claims under the Interstate Land Sales Full Disclosure Act ("ILSA") and the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), as well as for negligent misrepresentation and fraud under North Carolina law. Subsequently, the District Court dismissed the negligent misrepresentation claim. (Order, Jan. 9, 2014.) Defendant now moves for summary judgment on the remaining claims. The Court **RECOMMENDS** that the District Court **GRANT** the motion.

1

## I. Procedural Background

Plaintiffs initially brought this lawsuit as a mass action with numerous other plaintiffs who had also purchased lots at River Rock and used Defendant to finance the purchase of the lots. The Court severed the claims, and only the claims asserted by Plaintiffs Gregory Carter, Joanne Carter, and William Wright remained in this action. (Order, Jun. 11, 2012.) Many of the other purchasers then refiled individual complaints asserting identical claims against Defendant. Several of these cases recently came before United States District Judge Martin Reidinger, who granted Bank of America's motions for summary judgment and dismissed the actions. See e.g. Pinkham v. Bank of America, Civil No. 2:12-cv-00033-MR-DLH, 2014 WL 6065962 (W.D.N.C. Nov. 13, 2014) (J. Reidinger); Tracy v. Bank of America, Civil No. 2:12-cv-00031-MR-DLH, 2014 WL 6065957 (W.D.N.C. Nov. 13, 2014) (J. Reidinger); Kornfeld v. Bank of America, Civil No. 2:12-cv-00030-MR-DLH, 2014 WL 6065953 (W.D.N.C. Nov. 13, 2014) (J. Reidinger).

Defendant now moves for summary judgment on all the remaining claims in this legal action. The District Court referred Defendant's Motion for Summary Judgment to this Court. As such, this case is now properly before the Court for a Memorandum and Recommendation to the District Court.

## II. Factual Background

Plaintiffs Gregory and Joanne Carter (the "Carter Plaintiffs") first learned about River Rock from Paul Tarins, whom they were introduced to through Plaintiff Wright. (G. Carter Dep. 33:2-10, Oct. 28, 2004.) Plaintiff Wright informed the Carter Plaintiffs that Mr. Tarins was an individual who had a portfolio of different sorts of investment vehicles and that Plaintiff Wright had worked with Mr. Tarins in the past. (G. Carter Dep. 33:24-34:10.) Mr. Tarins did not work for Legasus of North Carolina, LLC ("Legasus"), the developer of River Rock, at the time of the these conversations, although he may have received referral or sales bonuses. (G. Carter Dep. 42:4-10.)

In 2005, Plaintiff G. Carter spoke with Mr. Tarins on the phone about River Rock. (G. Carter Dep. 34:16-35:02; 40:3-18.) Mr. Tarins, who came across as a pushy salesperson, informed Plaintiff G. Carter about a number of the amenities at River Rock, including a golf course to be designed by Phil Mickelson. (G. Carter Dep. 35:21-36:09; 37:21-38:08.) During a second conversation, Mr. Tarins and Plaintiff G. Carter discussed some of the specific characteristics of the available lots. (G. Carter Dep. 40:19-41:09.) After this second conversation, Mr. Tarins emailed Plaintiff G. Carter some written information on River Rock that included a map of different plots in the development that were available for purchase. (G.

Carter Dep. 41:10-25; 46:2-13.)

During either this second or a third conversation, Mr. Tarins provided Plaintiff G. Carter with the contact information for Earl Oxendine, a loan officer with Defendant Bank of America. (G. Carter Dep. 42:21-43:13.) Plaintiff G. Carter then called Mr. Oxendine to discuss financing the purchase of a lot. (G. Carter Dep. 74:2-15.) Mr. Oxendine, who was familiar with Mr. Tarins, the River Rock development, and Legasus, discussed financing the purchase of the lot with Plaintiff G. Carter. (G. Carter Dep. 74:19-75:19; 78:15-79:11.) During this conversation, Plaintiff G. Carter got the impression that Mr. Oxendine had worked with Mr. Tarins previously. (G. Carter Dep. 79:3-16.)

Plaintiff G. Carter felt more comfortable with the transaction because he was familiar with the Bank of America name and Bank of America was willing to underwrite his mortgage for a lot at River Rock. (G. Carter Dep. 77:9-78-10.) Although Plaintiff G. Carter believed that an institution the size of Bank of America would conduct due diligence to ensure that an investment in River Rock was prudent, he did not ask Mr. Oxendine what, if any, due diligence Bank of America had done. (G. Carter Dep. 78:2-14.) This was the only conversation that Plaintiff G. Carter had with Mr. Oxendine, and Plaintiff G. Carter does not recall speaking with anyone else at Bank of America prior to purchasing the lot.

(G. Carter Dep. 83:21-25; 85:18-23.)

On December 13, 2005, the Carter Plaintiffs purchased Lot 38 from Legasus for $299,900. (Ex. 3 to Def.'s Mot. Summ. J. ("Ex. 3").) Defendant is not a party to this agreement and Plaintiffs did not purchase the lot from Defendant. (Ex. 4 to Def.'s Mot. Summ. J. ("Ex. 4") at ¶¶ 7-8.) Plaintiff Wright was also not a party to the agreement. (Ex. 3.) Rather, Plaintiff Wright was a silent partner who provided half of the investment capital for the purchase of the lot. (G. Carter Dep. 65:3-66:25.)

Prior to entering into the purchase agreement for Lot 38, Plaintiffs do not recall receiving any written marketing materials from Defendant regarding River Rock or attending any events hosted by Defendant or River Rock where a Bank of America representative was present. (G. Carter Dep. 63:24-65:2; Ex. 4 at ¶¶ 9-11.) Moreover, Plaintiff G. Carter does not recall speaking with anyone at Legasus prior to purchasing the lot. (G. Carter Dep. 44:1-10, 49:17-21.) Plaintiffs did not attend any sales events and did not visit River Rock before purchasing the lot. (G. Carter Dep. 44:8-13.) In fact, Plaintiff G. Carter does not even recall ever visiting North Carolina. (G. Carter Dep. 45:14-21.) Finally, the Carter Plaintiffs did not order or review an appraisal of the property prior to purchasing the lot. (Ex 4 at ¶¶ 5-6.)

On February 27, 2006, the Carter Plaintiffs closed on Lot 38 by executing a Promissory Note in the principal amount of $269,910. (Ex. 5 to Def.'s Mot. Summ. J. ("Ex 5").) The Promissory Note was secured by a Deed of Trust in favor of Bank of America. (Ex. 6 to Def.'s Mot. Summ. J. ("Ex. 6").) The Carter Plaintiffs executed both documents in Massachusetts. (G. Carter Dep. 93:24-94:13; Ex. 6 at p 14.)

At some point after closing, Plaintiff G. Carter reached out to Legasus for updates related to the development, but received little other than generic marketing materials in response. (G. Carter Dep. 108:4-17; 110:7-16.) Subsequently, in 2008 or 2009 Plaintiff G. Carter joined a user group of individuals who purchased lots at River Rock. (G. Carter Dep. 105:2-109:25.) Plaintiff G. Carter also went to a trade show in Massachusetts in order to speak with someone at Legasus and get information on River Rock during this same time period. (G. Carter Dep. 112:6-113:8.) By the time Plaintiff G. Carter attended the trade show he was becoming increasing nervous about the River Rock development and the lack of activity. (G. Carter Dep. 113:16-114:8.) By August 2008, the purchasers of River Rock began to express concern that River Rock lacked funding for the development to be completed, and they were discussing taking legal action. (Ex. 7 to Def.'s Mot. Summ. J. ("Ex. 7").)

In 2009 Plaintiffs stopped making loan payments on the lot. (G. Carter Dep. 103:14-104:9.) On December 8, 2011, Plaintiffs commenced this action asserting various claims against Defendant. The Carter Plaintiffs have still never visited River Rock and seen the lot they purchased. (Ex. 4 at ¶ 13; G. Carter Dep. 45:22-46:1.)

### III. Legal Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of some alleged factual dispute between the parties will not defeat a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510 (1986); Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003). Rather, there must be a genuine issue of material fact. Id. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248, 106 S. Ct. 2510. Finally, in deciding a motion for summary judgment, the Court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). The

Court, however, may consider the other materials in the record.  Id.

   **IV.   Analysis**

   **A.   The Statute of Limitations**

The statute of limitations for a claim brought pursuant to the North Carolina Unfair and Deceptive Trade Practices Act is four years.  N.C. Gen. Stat. § 75-16.2.  Ordinarily, a UDTPA claim accrues and the statute of limitations begins to run when the alleged violation occurs.  Hinson v. United Fin. Servs., Inc., 473 S.E.2d 382, 387 (N.C. Ct. App. 1996).  Where the UDTPA claim is based on fraud, however, the claim accrues when the plaintiff discovers the fraud or when the plaintiff should have discovered the fraud with the exercise of reasonable diligence.  Nash v. Motorola Commc'ns & Elecs., Inc., 385 S.E.2d 537, 538 (N.C. Ct. App. 1989); Wysong & Miles Co. v. Emp'rs of Wausau, 4 F. Supp. 2d 421, 433 (M.D. N.C. 1998).  North Carolina courts "have determined that a plaintiff cannot simply ignore facts which should be obvious to him or would be readily discoverable upon reasonable inquiry."  S.B. Simmons Landscaping & Excavating, Inc. v. Boggs, 665 S.E.2d 147, 161-62 (N.C. Ct. App. 2008).  "Whether a plaintiff exercised due diligence in discovering fraud is usually a question of fact . . . but this question may be determined as a matter of law where the plaintiff clearly had both the capacity and opportunity to discovery the fraud."  Wysong & Miles, 4 F.

Supp. 2d at 433; see also State Farm Fire & Cas. Co. v. Darsie, 589 S.E.2d 391, 397 (N.C. Ct. App. 2003) ("where the evidence is clear and shows without conflict that the claimant had both the capacity and opportunity to discover the fraud but failed to do so, the absence of reasonable diligence is established as a matter of law.").

Plaintiffs' fraud claim is subject to a shorter three year statute of limitations. N.C. Gen. Stat. § 1-52(9); Barger v. McCoy Hillard & Parks, 488 S.E.2d 215, 223-24 (N.C. 1997); Ussery v. Branch Banking & Trust Co., 743 S.E.2d 650, 654 (N.C. Ct. App. 2013); Guyton v. FM Lending Servs., Inc., 681 S.E.2d 465, 470-71 (N.C. Ct. App. 2009). A fraud claim accrues on the day the plaintiff discovers the fraudulent act or should have discovered the act through the exercise of reasonable diligence, irrespective of how much time has actually passed. N.C. Gen. Stat. § 1-52(9); Birtha v. Stonemor, N.C., LLC¸ 727 S.E.2d 1, 9 (N.C. Ct. App. 2012); Darsie, 589 S.E.2d at 396.

Finally, an ILSA claim is also subject to a three year statute of limitations. 15 U.S.C. § 1711. As the Court explained in Barnard v. SunTrust Bank, Civil No. 1:11-cv-000289-MR, 2013 WL 5460291, at *7 (W.D.N.C. Sept. 30, 2013) (Reidinger, J.), the actual accrual date of an ILSA depends on the particular type of ILSA claim asserted by Plaintiffs.

> For example, for an alleged violation of § 1703(a)(2)(A), (a)(2)(B), or (a)(2)(C)4, the statute of limitations began to run "three years after discovery of the violation or after discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 1711(a)(2). The statute of limitations for an alleged violation of § 1702(a)(2)(D) begins to run three years after the date of signing of the contract of sale. See 15 U.S.C. § 1711(a)(1). This limitations period, however, may be subject to equitable tolling if the plaintiffs can demonstrate "(1) that they exercised due diligence to discover their cause of action before the limitations period ran; and (2) that the defendant committed an affirmative act of fraudulent concealment to frustrate discovery despite due diligence." Orsi v. Kirkwood, 999 F.2d 86, 89 (4th Cir.1993); Lukenas v. Bryce's Mountain Resorts, Inc., 538 F.2d 594, 597 (4th Cir.1976); Dexter v. Lake Creek Corp., No. 7:10–CV–226–D, 2013 WL 1898381, at *4 (E.D.N.C. May 7, 2013).

Id.; see also Beritelli v. Wells Fargo Bank, N.A., Civil No. 1:11-cv-000179-MR, 2013 WL 5460179, at *7 (W.D.N.C. Sept. 30, 2013) (Reidinger, J.)

Plaintiffs entered the purchase agreement for the lot at River Rock on December 13, 2005. On February 27, 2006, Plaintiffs closed on the property and took possession of Lot 38 at River Rock. Plaintiffs, however, waited until December 8, 2011, to bring this action. Like the other River Rock purchasers whose claims were found to be time barred in Kornfeld, Pinkham, and Tracy, Plaintiffs claims are all barred by the applicable statute of limitations. Kornfeld, 2014 WL 6065953 at *4; Tracy, 2014 WL 6065957 at *5; Pinkham, 2014 WL 6065962 at *4. Plaintiffs have failed to present evidence that Defendant committed any affirmative act of fraudulent concealment to frustrate the discovery

of the violations. Moreover, Plaintiffs could have discovered the acts at issue through the exercise of reasonable diligence. Plaintiffs, however, purchased a lot without visiting the state where the lot was located, and failed to visit River Rock even after the purchase of the lot. Accordingly, Plaintiffs' claims are time barred.[1]

B.   **The ILSA Claim**

The ILSA "is designed to prevent false and deceptive practices in the sale of unimproved tracts of land by requiring developers to disclose information needed by potential buyers." Flint Ridge Dev. Co. v. Scenic Rivers Ass'n of Okla., 426 U.S. 776, 778, 96 S. Ct. 2430, 2433-34 (1976). The ILSA is based on the same notion of full disclosure that permeates the Securities Act of 1933. Id. "The Act also requires sellers to inform buyers, prior to purchase, of facts which would enable a reasonably prudent individual to make an informed decision about purchasing a piece of real property." Burns v. Duplin Land Dev., Inc., 621 F. Supp. 2d 292, 301 (E.D.N.C. 2009).

An individual who purchases a lot may bring a civil action under the ILSA against a "developer or agent" who violates Section 1703(a). 15 U.S.C. § 1709; Burns, 621 F. Supp. 2d at 301; Nahigian v. Juno Loudoun , LLC, 684 F. Supp. 2d

---

1   The Court, however, will also address each of Plaintiffs' claims separately for the benefit of the District Court in case the District Court disagrees with the Court's recommendation as to the application of the applicable statute of limitations.

731, 742 (E.D. Va. 2010) ("A private cause of action arises under the Act only against a 'developer or agent'"). Section 1701 defines a "developer" as "any person who, directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots in a subdivision . . . ." 15 U.S.C. § 1501(5). The statute does not limit the definition of a developer to the original entity that subdivides undeveloped land and offers lots for sale. U.S. Dep't of Hous. & Urban Dev. v. Cost Control Mktg. & Sales Mgmt. of Va., Inc., 64 F.3d 920, 925 (4th Cir. 1995); Olsen v. Lake Cnty. Inc., 955 F.2d 203, 205 (4th Cir. 1991). An "agent" is defined as "any person who represents, or acts for or on behalf of, a developer in selling or leasing, or offering to sell or lease, any lot or lots in a subdivision; but shall not include an attorney at law whose representation of another person consists solely of rendering legal services . . . ." 15 U.S.C. § 1501(6).

As a general rule, lending institutions acting in the ordinary course of their business are not considered developers within the meaning of the ILSA. See Karp, 887 F. Supp. 2d at 689; Coleman, 887 F. Supp. 2d at 667; Cumberland Cap. Corp. v. Harris, 621 F.2d 246, 251 (6th Cir. 1980); Hammar v. Cost Control Mktg. & Sales Mgmt. of Va., Inc., 757 F. Supp. 698, 702 (W.D. Va. 1990); Kenneally v. Bank of Nova Scotia, 711 F. Supp. 2d 1174, 1191-92 (S.D. Cal. 2010) (collecting cases). "A bank . . . which merely finances the various lot sales and has no

involvement in the development, marketing, or sale of the land unless foreclosure becomes necessary, is certainly acting in the ordinary course of business." Hammar, 757 F. Supp. at 702. A commercial bank such as Bank of America, however, may step outside of its ordinary role as a lending institution and be considered a developer under the ILSA where it directly or indirectly markets property for sale. See 15 U.S.C. § 1501(5); Cumberland, 621 F.2d at 251; Hammar, 757 F. Supp. at 702; Kenneally 711 F. Supp. 2d at 1192; Timmreck v. Munn, 433 F. Supp. 396 (N.D. Ill. 1977); Thompson v. Bank of America, No. 7:09cv89, 2011 WL 1253163, at *1 (E.D.N.C. Mar. 30, 2011).

As the United States District Court for the Western District of Virginia explained in Hammar:

> When a financial institution allows its name to be used in advertisements or announcements for a development, it is in effect lending its prestige and good name to the sales effort. It is participating to an acceptable degree in the marketing of the project. It is has gone beyond its function as a commercial bank to lot purchasers.

757 F. Supp. at 702-3. In In re Total Realty Mgmt., LLC, the Fourth Circuit reached a similar conclusion, holding that the "Interstate Land Sales Act's fraud provision encompasses entities that participated in the advertising and promotional efforts leading to a challenged real estate transaction, even if they ultimately were not party to the transaction." 706 F.3d 245, 253 (4th Cir. 2013).

13

Just as the District Court held in Kornfeld, Pinkham, and Tracy, there is no genuine issue of material fact in this case as to whether Bank of America was a developer or agent within the meaning of the ILSA. Kornfeld, 2014 WL 6065953 at *6; Tracy, 2014 WL 6065957 at *6; Pinkham, 2014 WL 6065962 at *6. Rather, the evidence demonstrates that Bank of America and Mr. Oxendine did nothing to step outside their ordinary roles as lenders for a development. Plaintiffs have failed to come forward with any evidence that Defendant directly or indirectly marketed lots at River Rock for sale. Finally, Plaintiffs assertion that they never received a HUD Property Report from Legasus and, thus, have the right to rescind the Purchase Agreement fails for the same reasons set forth by the District Court in Kornfeld, Pinkham, and Tracy. Kornfeld, 2014 WL 6065953 at *6; Tracy, 2014 WL 6065957 at *6; Pinkham, 2014 WL 6065962 at *6. Accordingly, even if Plaintiffs' ILSA claims were not time barred, Defendant would still be entitled to summary judgment on these claims.

**C.    The Fraud Claim**

In order to assert a fraud claim in North Carolina, a plaintiff must demonstrate: (1) a false representation or concealment of a material fact; (2) that is reasonably calculated to deceive; (3) is made with the intent to deceive; (4) does in fact deceive the plaintiff; and (5) damages that result from the false representation

14

or concealment. Anderson v. Sara Lee Corp., 508 F.3d 181, 189 (4th Cir. 2007) (applying North Carolina law). In addition, a plaintiff must reasonably rely on the false representations. Id. North Carolina courts, however, recognize that the doctrine of reasonable reliance will prevent a plaintiff from recovering under a theory of fraud in some circumstances. Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 341 (4th Cir. 1998). "Specifically, if a plaintiff has an alternative source for the information that is alleged to have been concealed from or misrepresented to him, his ignorance or reliance on any misinformation is not reasonable." Id.

Generally, a representation that is only a statement of one's opinion cannot constitute a false representation for purposes of a fraud claim. Myrtle Apartments, Inc. v. Lumbermen's Mut. Cas. Co., 127 S.E.2d 759, 761 (N.C. 1962) (holding that an engineer's report recommending that a boiler be replaced after the heating season could not constitute fraud); Leftwich v. Gains, 521 S.E.2d 717, 722-23 (N.C. Ct. App. 1999); compare Meyers & Chapman, Inc. v. Thomas G. Evans, Inc., 374 S.E.2d 385, 389-90 (N.C. 1988) (holding that representation in statement from contractor that work had been completed and payment was due was not an opinion). "However, the general rule that no one is liable for an expression of opinion is not a hard and fast rule; . . . it does not apply to the dishonest expression

15

of an opinion not actually entertained.'" Leftwich, 521 S.E.2d at 723 (quoting 37 C.J.S. *Fraud* § 13 (1997)). As the Court of Appeals in Leftwich explained, "a statement purporting to be opinion <u>may</u> be the basis for fraud if, at the time it is made, the maker of the statement holds an opinion contrary to the opinion he or she expresses, and the maker also intends to deceive the listener." Id. (emphasis added); <u>see</u> <u>also</u> Karp, 887 F. Supp. 2d at 687-88 (denying motion to dismiss fraud claims based on statements by a loan officer to prospective purchasers as to the value of lots at River Falls); Olympus Managed Health Care, Inc. v. Am. Housecall Physicians, Inc., 662 F. Supp. 2d 427, 438(W.D.N.C. 2009) (Conrad, C.J.); Silicon Knights, Inc. v. Epic Games, Inc., No. 5:07cv275, 2011 WL 1134453, at *6 (E.D.N.C. Jan. 25, 2011) ("But a purported opinion or promissory representation may support a fraud claim if, at the time the statement is made, the speaker actually believes to the contrary and makes the statement with an intent to deceive the other party.").

In response to the Motion for Summary Judgment, Plaintiffs have failed to come forward with any evidence of a misrepresentation by Mr. Oxendine that could form the basis of a fraud claim.² The single conversation between Mr. Oxendine and Plaintiff G. Carter regarding River Rock does not give rise to a fraud

---

2  Plaintiffs may not avoid summary judgment by citing and relying on its own Rule 26 initial disclosures.

16

claim. Moreover, Plaintiffs have not demonstrated that the statement of opinion made by Mr. Oxendine as to the upside of River Rock (G. Carter Dep. 86:8-18) was made by Mr. Oxendine despite holding the contrary opinion. Plaintiffs have failed to come forward and point this Court to <u>any</u> evidence of a misrepresentation by Mr. Oxendine. Because Plaintiffs failed to come forward with any evidence supporting an actionable misrepresentation by Mr. Oxendine, Defendant is entitled to summary judgment on the fraud claim.

**D. North Carolina Deceptive Trade Practices Act**

In order to make out a *prima facie* claim for unfair and deceptive trade practices, Plaintiffs must show that: (1) Defendant committed an unfair or deceptive act or practice; (2) that this act or practice was in or affecting commerce; and (3) that the act or practice proximately caused the Plaintiffs' injury. <u>Gray v. N.C. Ins. Underwriting Ass'n</u>, 529 S.E.2d 676, 681 (N.C. 2000); <u>Hospira Inc. v. Alphagary Corp.</u>, 671 S.E.2d 7, 12 (N.C. Ct. App. 2009); <u>Sessler v. March</u>, 551 S.E.2d 160, 167 (N.C. Ct. App. 2001). A practice is unfair if it "'is immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers.'" <u>Thompson</u>, 418 S.E.2d at 699 (quoting <u>Johnson v. Phoenix Mut. Life Ins. Co.</u>, 266 S.E.2d 610, 621 (N.C. 1980)); <u>Sessler</u>, 551 S.E.2d at 167. A practice is deceptive where it has the tendency or capacity to deceive. <u>Thompson</u>, 418 S.E.2d at 699;

Sessler, 551 S.E.2d at 167. "In making a claim of unfair and deceptive trade practices on a theory of misrepresentation or fraud, a plaintiff must show that a defendant's words or conduct possessed 'the tendency or capacity to mislead' or create the likelihood of deception.'" Hospira, 671 S.E.2d at 12 (quoting Marshall v. Miller, 276 S.E.2d 397, 403 (1981)). Moreover, a plaintiff does not have to show actual deception to prevail, he or she need only demonstrate that the acts of defendant "possessed the tendency or capacity to mislead or create the likelihood of deception." RD & J Props. v. Lauralea-Dilton Enters., LLC, 600 S.E.2d 492, 500-501 (N.C. Ct. App. 2004).

As a threshold matter, to the extent that Plaintiffs' claim is derivative of their fraud or ILSA claims, such claims fail for same reasons that the underlying claims fail. See Kornfeld, 2014 WL 6065953 at *6; Tracy, 2014 WL 6065957 at *9; Pinkham, 2014 WL 6065962 at *9. Moreover, Plaintiffs may not base their claim on the assertion that Defendant was closely aligned with Legasus. Kornfeld, 2014 WL 6065953 at *6; Tracy, 2014 WL 6065957 at *9; Pinkham, 2014 WL 6065962 at *9. Finally, Plaintiffs have failed to come forward with any other evidence to support their unfair and deceptive trade practices claim. Accordingly, Defendant is entitled to summary judgment on this claim.

V. Conclusion

The Court **RECOMMENDS** that the District Court **GRANT** the Motion for Summary Judgment [# 59].

Signed: May 5, 2015

Dennis L. Howell
United States Magistrate Judge

**Time for Objections**

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).